IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT SCHEARER, as Trustee of the ESTATE OF FRANK PAUL and AMY PAUL, )
)
Plaintiff, )
)
-vs- )
Civil Action No. 06-796
)
COCO-COLA ENTERPRISES, INC., )
)
Defendant. )

AMBROSE, Chief District Judge.

OPINION and ORDER OF COURT

SYNOPSIS

Plaintiff[1] represents Amy Paul, a former Category I account manager for Defendant Coca-Cola Enterprises, Inc. ("CCE"), who alleges that her termination from employment resulted from Defendant's gender discrimination in violation of 42 U.S.C. § 2000-e and the Pennsylvania Human Relations Act, Title 443 P.S. § 951, et seq.. Defendant moves for summary judgment on the grounds that Ms. Paul was terminated due to her violations of CCE policy and the policy of one of CCE's customers, not as a result of any alleged discrimination.

For the reasons set forth below, I deny Defendant's motion for summary judgment.

[1] By order of the Court, dated May 15, 2007, I granted Robert Shearer's motion, as trustee of the Estate of Frank A. and Amy L. Paul, to be substituted as plaintiff herein.

A. APPLICABLE STANDARDS

Summary judgment may be only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. Rule Civ. P. 56(c). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chem.Co., 898 F.2d 946, 949 (3d Cir. 1990). "The role of the trial judge 'is not [herself] to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" Weldon v. Kraft, Inc., 896 F.2d 793, 797 (3d Cir. 1990) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). "The nonmovant's allegations must be taken as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." Jackson v. Univ. of Pittsburgh, 826 F.2d 230, 232 (3d Cir. 1987)(internal quotations omitted).

B. FACTS AT ISSUE

Ms. Paul was hired by Defendant in 1999 as a merchandiser, and shortly thereafter was promoted to account manager. In 1992, she became a Category I account manager under the supervision of Chris McIlvain, the District Sales Manager for her route. She was assigned to that route by Mr. Rosen, the Sales Manager, at her request. Ms. Paul testified that, prior to accepting that position, she was warned by George Spencer, another District Sales Manager, that Mr.

McIlvain was "very old-fashioned when it come (sic) to women working; especially women who had children at home."  Mr. Spencer was at the time and continues to be a close friend of Mr. McIlvain.

While Mr. McIlvain had no role in Ms. Paul's appointment to Category I account manager, he agreed to permit Ms. Paul to be assigned to his territory.  She was the only female account manager ever assigned to Mr. McIlvain, and Mr. McIlvain has never hired a woman to fill any position since becoming district sales manager in 2001.  Similarly, Ms. Paul was the only female account manager out of the 15-18 account managers under Mr. Rosen's supervision.  Ms. Paul testified that she had difficulty working with Mr. McIlvain, that he failed to keep appointments at her stores, did not return her calls, ignored her in meetings and did not look at her when he did respond, all contrary to his demeanor and responsiveness to the male account managers.

It is undisputed that on November 3, 2004, Mr. McIlvain received a call from Mr. Bingey, the owner of a Giant Eagle store in West Newton, Pennsylvania.  Upon arriving at the store that morning, Mr. Bingey had noticed that cases of soft drinks were missing from the back room.  He reviewed the store's surveillance video from the previous afternoon and saw Ms. Paul, with the assistance of a store clerk, unloading a pallet of 2-liter soft drink bottles into a dumpster behind the store.  He also checked the store records and asked Mr. Furman, the assistant manager on duty the previous afternoon, whether Ms. Paul had issued credit to the store before removing the product.  He learned that she had not provided

Mr. Furman with a credit slip. Mr. Bingey then called Mr. McIlvain to complain, and later that morning, Mr. McIlvain and Mr. Rosen arrived at the store to investigate Mr. Bingey's complaint.

According to Mr. McIlvain and Mr. Rosen, Mr. Bingey showed them the store surveillance video. They went outside and observed approximately 12 cases of two liter soft drink products in the dumpster. According to CCE policy, an employee may not throw away more than 5 cases of a product. Any additional damaged or out-of-date product must be marked with an 'X' and returned to the warehouse. Credit must be issued to the customer before either of these actions are taken. Mr. McIlvain and Mr. Rosen stated that many of the bottles in the dumpster were neither damaged nor out-of-date, and that none of the bottles had been marked with an 'X'. Mr. McIlvain and Mr. Rosen further stated that Mr. Bingey was very upset and did not want Ms. Paul allowed back into his store.

According to Ms. Paul's deposition testimony, when she arrived at the Giant Eagle on the afternoon of November 2, 2004, she noticed the pallet of out-of-date bottles in the back room, and further found more out-of-date and damaged bottles on the shelf. She had been warned by Mr. McIlvain that "secret shoppers," or auditors, would be coming to the store that week to check for out-of-date and damaged product on the shelves. Concerned that a truck was not scheduled to arrive at the store to remove product until the end of the week, Ms. Paul called Mr. McIlvain. Mr. McIlvain told her to "do what [she] had to do get rid of the product and get it out of the store." Ms. Paul counted the bottles and issued a

credit to the store on her handheld SA Tool computer. She also noted the number of bottles on a pickup slip to use when the truck came later in the week. Ms. Paul then spoke to Mr. Furman, the assistant store manager on duty, and, since it was raining, requested the help of a stock clerk to move the product into a dumpster.[2] Ms. Paul did not mark any of the bottles with 'X's since none of them would be returning to the warehouse.

On November 3, after Mr. McIlvain and Mr. Rosen returned from the Giant Eagle store, they called Ms. Paul in to discuss the allegations. According to the summary of that meeting, set forth in the "Termination Approval Request Form" annexed to the Declaration of Mr. Rosen as Exhibit D, Ms. Paul was not informed of the nature of the complaint against her. Instead, she was asked to recite her activities at the Giant Eagle store over the course of the week. Ms. Paul testified that, since she had not been informed of the reason for the meeting, she was unprepared and very nervous. Nonetheless, Ms. Paul testified that she related both Mr. McIlvain's instructions to "do what you what had to do to get rid of the product and get it out of the store" and that she had attempted to issue a credit on her SA Tool computer. Ms. Paul was suspended at the end of the meeting. The Termination Approval Request Form contains no mention of her allegation that Mr. McIlvain directed her to dispose of the product.

It is undisputed that, besides Mr. McIlvain and Mr. Rosen, no other employee of Defendant conducted any investigation of the incident or contacted Ms. Paul to

[2] Mr. Furman told Mr. Rosen and Mr. McIlvain that his hearing was "not the best" due to a head cold and that Ms. Paul "may have said something."

hear her side of incident. Mr. Atkins, Employee Relations Manager, stated in his deposition that Ms. Paul would not have been terminated if he had known she had been following Mr. McIlvain's instructions in disposing of the product. Ms. Morris, Division HR Manager, after reviewing the Request for Termination, expressed her concern that termination was not warranted under these circumstances. Mr. Deitrick, the Sales Center Manager, who made the final decision to terminate Ms. Paul's employment based on the information provided by Mr. McIlvain and Mr. Rosen, testified in his deposition that he was not aware that the employee handheld computers could malfunction, preventing them from processing credits.[3] He further stated in his declaration that he had not been made aware of Ms. Paul's position that she had been instructed by Mr. McIlvain to dispose of the product.

With regard to the company's written disposal policy, Ms. Paul testified that "there was a written policy, but it wasn't always done that way. You called your Merchandiser Supervisor or your District Manager, depending on the situation. Things were done different ways all the time. It wasn't always the same as what was written in the policy." Ms. Paul has testified that she had on numerous occasions witnessed other account managers as well as other CCE employees disposing of in excess of five cases of product in dumpsters. As she stated, "This wasn't just something that I did on that day for the hell of it. This is something that was done all the time." Ms. Paul specifically identified Nathan Goff, Tuan, the

---

[3] Mr. McIlvain and Mr. Rosen were aware of this possibility, as both acknowledged in their depositions that the handheld SA Tool computers were prone to malfunction.

Merchandiser Supervisor, Jeff Lowe, Eric Wallace, and Mike Duff. Ms. Paul also testified that she was told by Curtis Fuqua, Lynn Kinnear and John Blanton that Mr. McIlvain had disposed of a large amount of product at Phar-Mor stores, and that as a result, he was no longer permitted to service these stores. According to Ms. Paul, none of the male employees identified by her were terminated as a result of their actions. It is unclear from the record which of these individuals continue to be employed by Defendant.

After Ms. Paul's termination, her route was assigned to Curtis Fuqua, a male.

C. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Supreme Court's opinion in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), sets forth a three-step process for the presentation of proofs and allocation of burdens in discrimination cases. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993). "First, plaintiff must prove by a preponderance of evidence that a prima facie case of discrimination exists. Second, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's [termination]. Third, if defendant meets its burden, plaintiff must be given the opportunity to prove by a preponderance of the evidence that the legitimate reasons proffered by defendant were not its true reasons, but rather, a pretext for discrimination." Id. at 637-38 (internal citations omitted). This same analysis applies to Plaintiff's claim arising under the Pennsylvania Human Relations Act, Title 43 P.S. § 951, et. seq. See Gomez v. Allegheny Health Svcs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995).

For purposes of this summary judgment motion, Defendant does not dispute that Plaintiff can establish a prima facie case. (Memorandum of Law In Support of Defendant's Motion for Summary Judgment ("Def. Mem."), at 9.) Defendant has similarly met its burden to articulate a legitimate reason for its decision to terminate Ms. Paul's employment - that Ms. Paul "was terminated following a customer's complaint in which it was discovered that she improperly removed products from the customer's store without issuing credit." (Id.) Accordingly, the burden has shifted back to Plaintiff to demonstrate that Defendant's proffered reason for Ms. Paul's termination was pretextual.

Defendant argues that Plaintiff "cannot show that any CCE employees involved in the decisionmaking process were biased against women" or that "CCE's decision to terminate [Ms.] Paul's employment was impacted by any bias on the part of McIlvain." (Def. Mem. at 10, 15.)[4] "Discriminatory conduct is often subtle and difficult to prove." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990). "Discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered." Jackson, 826 F.2d at 236. "For this reason, our legal system permits discrimination plaintiffs to prove their cases with circumstantial evidence." Weldon, 896 F.2d at 800. The "proper inquiry is whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably *could* support an inference that the employer did not act

[4] Defendant also argues that "Plaintiff cannot show that CCE treated comparable employees more favorably." (Def. Mem. At 10.) However, as Defendant recognizes (id. at 12 n.6), this argument addresses Plaintiff's ability to establish a prima facie case, a point conceded by Defendant for purposes of this Motion.

for non-discriminatory reasons, not whether the evidence *necessarily* leads to the conclusion that the employer did act for discriminatory reasons." Josey, 996 F.2d at 638 (emphasis in original). "At the summary judgment state, in other words, 'all that is required [for a nonmoving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth. . . .'" Jackson, 826 F.2d at 233 (quoting First Nat'l Bank of Ariz. V. Cities Servs. Co., 391 U.S. 253 (1968)).

Here, the Record contains ample inconsistencies and implausibilities requiring denial of summary judgment. While Defendant claims that Ms. Paul's employment was terminated because she improperly disposed of product and failed to issue a credit, Ms. Paul testified that she disposed of the product in accordance with the instructions given to her by Mr. McIlvain, her supervisor, that she notified the store's assistant manager of her intended actions, and that she did issue a credit. The only investigation into the incident was conducted by Mr. McIlvain and Mr. Rosen. Key information was withheld by them from the individuals who would make the formal decision to terminate Ms. Paul's employment - that Ms. Paul claimed she had issued a credit on her SA Tool, that the SA Tool was prone to malfunction, and that Ms. Paul claimed that she was following instructions provided by Mr. McIlvain. Moreover, Ms. Paul further testified that her actions were entirely consistent with company practice and with those of her male colleagues, none of whom had been terminated on that

basis. Finally, Ms. Paul testified that Mr. McIlvain treated her differently than her male colleagues through both his actions and his demeanor.

The Third Circuit has found that "factors such as a defendant's credibility . . .and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." Josey, 996 F.2d at 639. Moreover, the fact that the preponderance of evidence offered by Plaintiff at this stage consists of her own testimony does not make that evidence less probative for summary judgment purposes. See Jackson, 826 F.2d at 236 ("There is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment."); Weldon, 896 F.2d at 800 ("We cannot agree that [Plaintiff's] uncorroborated deposition testimony is insufficient to create a genuine issue on the question of discriminatory intent.")

Based on the foregoing, I find that Plaintiff has raised a genuine issue of fact as to whether Defendant's disclosed reason for terminating Ms. Paul's employment was a pretext for discrimination. Defendant's Motion for Summary Judgment is denied.

***********************************

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT SCHEARER, as Trustee of the ESTATE OF FRANK PAUL and AMY PAUL, )
)
Plaintiff, )
-vs- )
Civil Action No. 06-796
COCO-COLA ENTERPRISES, INC., )
)
Defendant. )

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **27th** day of September, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that Defendant's Motion for Summary Judgment (Docket No. [35]) is denied.

A settlement conference is scheduled for Tuesday, October 9, 2007, at 10:00 A.M., before the undersigned. Counsel are to have settlement authority and parties are to be present or available by telephone. Position letters are to be faxed three (3) days prior to the conference.

BY THE COURT:

/S/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge